# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BYRON HALL**                                    **CIVIL ACTION**

**VERSUS**

**GERALD LANE, ET AL.**                    **NO.: 12-00528-BAJ-SCR**

## RULING AND ORDER

Before the Court is **Defendants' Motion for Summary Judgment (Doc. 61)**, filed by Defendants Gerry Lane Enterprises, Inc. and Eric Lane[1] (collectively "Defendants"), seeking an order from this Court granting summary judgment, pursuant to Federal Rule of Civil Procedure 56, and dismissing Plaintiff Byron Hall's ("Hall") claims. Hall opposes the motion. (Doc. 63.) Defendants filed a reply memorandum. (Doc. 71.) Oral argument is not necessary. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

### A. Hall's Complaint[2]

Hall filed this employment discrimination lawsuit pursuant to Title VII of the

---

[1] Defendant Eric Lane is named as a Defendant in his capacity as the Representative of the Succession of Gerald R. Lane. (Doc. 46.)

[2] Hall originally filed this lawsuit along with ten other current and former employees of Gerry Lane Enterprises, Inc. (Doc. 1.) Subsequently, the Court issued an order requiring the Clerk of Court to sever the claims into eleven separate lawsuits, and requiring each plaintiff to file an amended complaint. (Doc. 4.) Accordingly, Hall filed his amended Complaint on September 11, 2012. (Doc. 6.)

Civil rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), and the Louisiana

Employment Discrimination Law, La. R.S. § 23:301, *et seq.*[3] Hall, an African American

male, alleges that Defendants discriminated against him on the basis of his national

origin, race, and sex and constructively discharged him from his sales associate

position at Gerry Lane Chevrolet in Baton Rouge, Louisiana. Specifically, Hall alleges

that dealership owner, Gerald R. Lane ("Lane"), created a hostile work environment

in which Hall was subjected to discriminatory comments, name-calling, abusive

language, intimidation, and unwelcome physical contact. Hall's Complaint also alleges

that Defendants actions amounted to intentional infliction of emotional distress. Hall

further alleges claims for assault and battery, pursuant to La. R.S. § 14:36 and La. Civ.

Code art. 2315, and a claim for unpaid wages under La. Rev. Stat. § 23:631, *et seq.*

### B.    Undisputed Facts[4]

·    Defendant Gerry Lane Enterprises operates as Gerry Lane Chevrolet, an automobile dealership in Baton Rouge.

·    Prior to his May 2013 passing, Lane owned a majority interest in Gerry Lane Enterprises.

---

[3] A previous ruling by this Court indicated that Hall also asserted a claim under 42 U.S.C. § 1981. (Doc. 86, p. 1.) However, a review of Hall's Complaint reveals that he seeks damages under 42 U.S.C. § 1981a *only*, and did not allege a claim under 42 U.S.C. § 1981. Under the terms of the Civil Rights Act of 1991, punitive damages awards are available in claims under Title VII. 42 U.S.C. § 1981a(b)(1). It is well established, however, that Title VII and 42 U.S.C. § 1981 are two separate and distinct causes of action. *Green v. Shannon Med. Ctr.*, No. 6:04-CV-066-C, 2006 U.S. Dist. LEXIS 4967, at *8 (N.D. Tx. Feb. 9, 2006).

[4] In accordance with Rule 56.1 of the Local Rules of the United States District Court for the Middle District of Louisiana, Defendants submitted a statement of undisputed material facts. (Doc. 64-2); L.R. 56.1. In opposition, Hall submitted a response to Defendants' statement of undisputed material facts. (Doc. 67-2); Fed.R.Civ.P. 56(c); L.R. 56.2. Accordingly, only certain material facts are deemed admitted for purposes of this ruling and order. L.R. 56.2.

- Lane also owned a majority interest in three other new car dealerships in Baton Rouge: Gerry Lane Cadillac, Gerry Lane Buick GMC and Gerry Lane Imports.

- Sales managers Ken Balthrop (African-American), Chad Bell (Caucasian), Cecil Overstreet (African-American) and JK Khamiss (Middle-Eastern) reported to Reynold Ankeny (Race Disputed) and directly supervised the sales force.

- The sales force typically is comprised of anywhere between twenty to thirty individuals.

- During the 2011-2012 time-frame, approximately seventy to eighty percent of the sales force at Gerry Lane Enterprises was African American.

- Hall was born and raised in Louisiana.

- Initially, Hall worked for Gerry Lane Saturn (which is now defunct) beginning in January 2009.

- In early 2009, during Hall's first tenure with Gerry Lane Saturn, he was involved in an incident with a Caucasian co-worker, Brian Dubois.

- As indicated in the policy, the matter was investigated by Terry Bell in his Human Resources capacity.

- Terry Bell determined that Brian Dubois made some inappropriate remarks.

- Brian Dubois was suspended for a week without pay and forced to apologize for his behavior.

- Hall received the transfer to the Chevrolet store and stayed away from Brian Dubois, who had moved to the Buick GMC store.

- Neither Lane nor Wayne Garafola sexually harassed Hall.

- Lane was hard on all employees, particularly when it came to enforcing internal rules concerning tardiness at meetings.

- Lane never touched Hall's face.

- Money for the "Mark of Excellence" program is paid by Chevrolet, rather than Gerry Lane Enterprises.

- Hall sold 37 units during six months of employment in 2011.

•   Hall contends he was due a commission in February 2012.

**C.   Defendants' Motion for Summary Judgment**

As to the instant motion, Defendants seek an order from this Court dismissing Hall's claims.  Defendants contend that Hall is precluded from asserting federal or state law discrimination claims against individual supervisors.  Defendants further argue that Hall cannot point to sufficient evidence to establish his discrimination claims on the basis of his sex, national origin, or race.  Defendants also contend that Hall cannot point to sufficient evidence to establish his constructive discharge, intentional infliction of emotional distress, assault and battery, or unpaid wages claims.  Accordingly, Defendants argue that summary judgment is warranted.

Hall concedes that relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer, and not against an individual supervisor or fellow employee.  He argues, however, that there are genuine disputes of material fact that preclude summary judgment in favor of Defendants. Specifically, Hall contends that there are genuine disputes of material fact related to his race claim, as well as his constructive discharge, intentional infliction of emotional distress, and unpaid wages claims.  Accordingly, Hall contends that Defendants' motion must be denied.  Hall does not make any specific arguments related to, or present any evidence in support of, his national origin discrimination, sexual harassment, or assault and battery claims.

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323; *Liquid Air Corp.*, 37 F.3d at 1075.

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable

inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

## III. Analysis

As an initial matter, as noted above, Hall concedes that relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer, and not against an individual supervisor or fellow employee. *Umoren v. Plano Indep. Sch. Dist.*, 457 F. Appx. 422, 425 (5th Cir. 2012); *Mitchell v. Tracer Construction Co., et al.*, 256 F. Supp. 2d 520, 525 (M.D. La. 2003); *see also* La. R.S. 23:303(A). Accordingly, Defendants' request that the Court dismiss Hall's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee is **GRANTED**.

## A.      Hall's Hostile Work Environment Claim on the Basis of His Sex[5]

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).  Such a violation occurs when the plaintiff establishes (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654  (5th Cir. 2012); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

In support of the motion, Defendants contend that Hall disavowed his sexual harassment claim during his deposition.  Hall failed to present any argument, or point to any evidence, in opposition.  Indeed, in his response to Defendants' statement of undisputed material facts, Hall did not dispute that "[n]either Mr. Lane nor Wayne Garafola [ ] sexually harassed Plaintiff."    (Doc. 61-2, p. 5; Doc. 63-2, p. 10.) Accordingly, it is reasonable for the Court to conclude that Hall has abandoned his sexual harassment claim at the summary judgment stage. *See Mid-Continent Cas. Co.*

---

[5] Employment discrimination claims under Title VII and the Louisiana Employment Discrimination Law are analyzed under the same standard. *Turner v. Kan. City Southern Ry. Co.*, 675 F.3d 887, 891 (5th Cir. 2012) (the Louisiana Employment Discrimination Law requires the same elements of proof as a Title VII hostile work environment claim); *Knapper v. Hibernia Nat'l Bank*, 49 So. 3d 898, 902 n.11 (La. Ct. App. 2010) ("Claims under the [Louisiana Employment Discrimination Law] are subject to the same analysis as discrimination claims under federal Title VII of the Civil Rights Act of 1964.").  Accordingly, Hall's claims under Title VII and the Louisiana Employment Discrimination Law shall be jointly addressed and analyzed.

*v. Bay Rock Operating Co.*, 614 F.3d 105, 113 (5th Cir. 2010) ("The fact that [plaintiff] raised this argument in its complaint will not save it from waiver if it failed to present this argument in its summary judgment motions.") (citation omitted); *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001); *Penrod v. Bank of N.Y. Mellon*, 824 F. Supp. 2d 754, 763 (S.D. Tx. 2011) ("Plaintiffs' summary judgment response has abandoned the claim, offering no briefing on the subject."). As such, Defendants' request that the Court dismiss Hall's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**.

## B. Hall's Hostile Work Environment Claim on the Basis of His Race

A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment. *Ramsey*, 286 F.3d at 268. "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[6] *Ramsey*, 286 F.3d at 268. Here, Defendants argue that Hall cannot point to

---

[6] Where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

sufficient evidence to establish that the harassment complained of was based on race, or that it affected a term, condition or privilege of his employment.

In order for harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank*, 477 U.S. at 67). For harassment to be sufficiently severe or pervasive to alter the conditions of employment, the conduct complained of must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Harris*, 510 U.S. at 21-22. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; (4) whether it interferes with an employee's work performance. *Id.* at 23.

In opposition to the motion, Hall contends that Lane subjected him to unwelcome harassment on the basis of his race that was severe and pervasive. In support of this contention, Hall points to his deposition, in which he testified as follows:

- during a 2011 or 2012 meeting with sales employees, Lane commented that "schools should have never integrated" and that "separate societies operated better" (Doc. 63-5, pp. 39-40);

- on more than three occasions, Lane referred to the dealership as his "plantation" and told the predominately African American sales force to "go pick [his] cotton" (Doc. 63-5, p. 11; Doc. 63-6, pp. 1-2);

- sometime in 2011, Hall overheard Lane express regret regarding changing the facade of the dealership from an antebellum plantation design (Doc. 63-6, p. 2);

- Hall overheard Lane tell a group of sales employees "You monkeys get from under the tree. You're under the tree like a bunch of monkeys." However, Lane "didn't specifically direct [the comment] at [Hall]." (Doc. 63-5, p. 18);

- Hall observed Lane touch the faces of African American employees to ensure they were clean shaven. According to Hall, Lane "never [checked] Caucasians, always African Americans." However, Hall also testified that "[i]t wasn't necessarily directed at [him]." Rather, Lane would "feel other people's faces." (Doc. 63-5, p. 36);

- on three or more occasions, Lane referred to predominately African American sales force as "All you Obamas." (Doc. 63-5, p. 22; Doc. 63-6, p. 1);

- Hall heard Lane make derogatory comments about President Obama on a weekly basis. However, Hall testified that he never heard Lane say that he did not like President Obama because of his race. Hall did not present any evidence to establish to whom Lane directed these comments. (Doc. 63-5, p. 24; Doc. 63-6, p.1);

- Hall overheard Lane refer to an African American employee as "Ninth Ward refugee." (Doc. 63-5, p. 22);

- during a 2011 or 2012 meeting with sales employees, Lane referred to an African American employee's Native American heritage as being from the "nigga ho tribe" (Doc. 63-5, p. 20);

Hall failed to present any other evidence to support his claim.

The Court finds that Hall has failed to present sufficient evidence to create a genuine dispute of material fact from which a jury could conclude that the harassment complained of affected a term, condition, or privilege of his employment. The record before the Court contains evidence of incidents that reasonably could be characterized as race-based: Lane's reference to African American employees as "monkeys"; Lane's reference to the dealership as his "plantation" and his directive that the predominately African American sales force go "pick [his] cotton"; Lane's reference to an African American employee's Native American heritage as the "nigga-ho tribe." However, as reprehensible as such comments are, they do not rise to the level of severity or pervasiveness required to support a hostile work environment claim.

The mere utterance of an ethnic or racial epithet that engenders offensive feelings in an employee, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *See Meritor*, 477 U.S. at 67; *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007). Rather, the plaintiff must establish that the harassment complained of was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Harris*, 510 U.S. at 21.

Here, Hall failed to present any evidence that the racial epithets, offensive comments, or harassing conduct was specifically directed at him. Rather, the evidence presented suggests that Lane's "nigga ho tribe" comment was an isolated remark that was not directed at Hall. While Lane's use of the term "monkey" was racially

inappropriate, evidence of racially inappropriate comments, without more, is not sufficiently severe. Further, while the phrase "All you Obamas" may have racial connotations, Hall failed to point the Court to any evidence to establish that Lane made such comments *because* of sales employees' and/or President Obama's race.

Hall further failed to present any evidence that the harassment complained of involved physically threatening or humiliating conduct. Indeed, Hall testified that the discriminatory "face checks" were not "necessarily directed at [him]." (Doc. 63-5, p. 36.) Rather, Lane would "feel other people's faces." (Doc. 63-5, p. 36.)

More importantly, Hall has failed to offer sufficient evidence concerning the objective effect of the harassment on his work performance. *Harris*, 510 U.S. at 23.

> Even when a hostile environment is shown, a plaintiff must establish that the workplace environment had the effect of altering the terms and conditions of his employment. Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged him from remaining on the job, or kept him from advancing in his career. Title VII is intended only to prohibit and prevent conduct 'that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace.'

*Sparks v. Alrod Enters.*, No. 3:00-CV-2110-L, 2003 U.S. Dist. LEXIS 7095, at *17 (N.D. Tex. Apr. 28, 2003) (citing cases). Here, Hall does not address, let alone present evidence to establish that, Lane's conduct interfered with his work performance.

As such, the Court finds that Hall has failed to present sufficient evidence to create a genuine dispute of material fact as to whether the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of his employment. *Compare Walker v. Thompson*, 214 F.3d 615, 619-22 (5th Cir. 2000)

(holding that a hostile work environment claim survived summary judgment where evidence demonstrated years of inflammatory racial epithets, including "nigger" and "little black monkey"), *with Johnson v. TCB Constr. Co.*, 334 F. Appx. 666, 671 (5th Cir. 2009) (finding insufficient evidence to establish a racially hostile work environment where a supervisor's comment that the plaintiff was just "like a damn nigger" was isolated; there was no evidence of the objective effect of that comment on the plaintiff's work performance; and although there was evidence that the supervisor frequently used the term "nigger," those other comments were not uttered in the plaintiff's presence and there was no evidence that they affected the plaintiff's job). Accordingly, Defendants' request that the Court dismiss Hall's hostile work environment claim on the basis of his race is **GRANTED**.

### C. Hall's Hostile Work Environment Claim on the Basis of His National Origin

A plaintiff may establish a Title VII violation based on national origin discrimination creating a hostile work environment. To establish a prima facie case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[7] *Ramsey*, 286 F.3d at 268 (citations omitted). Here, Defendants contend that Hall failed to allege a

---

[7] As mentioned above, where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

separate and distinct national origin discrimination claim. Hall failed to present any argument or evidence in opposition to Defendants' argument.

National origin, though often confused with race, refers to "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973). Accordingly, the EEOC Guidelines on Discrimination Because of National Origin define national origin discrimination "broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1.

Nothing in the record suggests that Hall's national origin is *not* American. Rather, it is undisputed that Hall was born and raised in the State of Louisiana. (Doc. 61-2, p. 2; Doc. 63-2, p. 2.) Further, Hall failed to present any evidence regarding his or his ancestor's place of origin. Accordingly, the Court finds that Hall's national origin discrimination claim is not a separate and distinct claim. As such, an analysis of Hall's national origin claim would merely duplicate the Court's analysis of his race claim. *See Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981) (in some contexts, national origin and racial discrimination are "so closely related . . . as to be indistinguishable.") When viewing the facts, it is clear that Hall is alleging race discrimination, and that his claim of discrimination on the basis of national origin is superfluous. Accordingly, Defendants' request that the Court dismiss Hall's claim that

he was subjected to a hostile work environment claim on the basis of his national origin is **GRANTED**.

### D.    Hall's Constructive Discharge Claim

"Constructive discharge occurs when an employee has quit [his] job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). To succeed on his constructive discharge claim, Hall must show "working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Hypolite v. City of Houston*, 493 Fed. Appx. 597, 607-608 (5th Cir. 2012) (quoting *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 674 F.3d 448, 453 (5th Cir. 2012)). There must be "a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Id.* (quoting *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011)). Therefore, courts in the Fifth Circuit consider aggravating factors including: (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id.* (citing *Nassar*, 674 F.3d at 453). Here, Defendants argue that Hall cannot point to sufficient evidence to establish these factors.

In opposition, Hall contends that he was forced to resign after the Company refused to issue him a commission check for a car he sold in February 2012. According

to Hall, he was "embarrassed and just outdone." (Doc. 61-6, p. 38.) However, Hall failed to point the Court to any evidence that the Company's decision was based on a protected status. Indeed, Hall's subjective belief that the Company's decision not to issue him a commission check was based on his race , without more, is insufficient to create a genuine dispute of fact. *Hypolite*, 493 Fed. Appx. at 608 ("mere conclusory statement are insufficient to overcome summary judgment) (citing cases). Further, given the Court's conclusion that has failed to present sufficient evidence to establish that he was subjected to harassment on the basis of his race, it cannot be said that the working conditions were "so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Accordingly, Defendants' request that the Court dismiss Hall's constructive discharge claim is **GRANTED**.

### E. Hall's Assault and Battery Claims

In Louisiana, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . ." *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003) (citing *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987)). According to the Louisiana Supreme Court, the defendant's intention need not be malicious nor need it be an intention to inflict actual damage. *Id.* (citing *Caudle*, 512 So. 2d at 391). It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent. *Id.* (citing *Caudle*, 512 So. 2d at 391). In contrast, "assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. § 14:36.

In support of the motion, Defendants argue that Hall cannot point to sufficient evidence to establish his assault and battery claims. Hall failed to present any argument, or point to any evidence, in opposition. Accordingly, the Court concludes that Hall has abandoned his assault and battery claims at the summary judgment stage. *See Mid-Continent Cas. Co.*, 614 F.3d at 113; *Vela*, 276 F.3d at 678-79; *Penrod*, 824 F. Supp. 2d at 763. As such, Defendants' request that the Court dismiss Hall's assault and battery claims is **GRANTED**.

### F.    Hall's Intentional Infliction of Emotional Distress Claim

In Louisiana, in order to recover for intentional infliction of emotional distress, a plaintiff must establish: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). In support of the motion, Defendants argue that Hall cannot point to sufficient evidence to establish these elements.

In opposition, Hall failed to point the Court to specific evidence to support each prong of his intentional infliction of emotional distress claim. Instead, Hall generally argues that where there is a question as to whether there was pattern of harassment, summary judgment is inappropriate. However, Hall's bare assertion that there are genuine disputes of material fact, without more, is insufficient. Even assuming, *arguendo*, that the evidence in the record establishes that Lane's conduct was extreme

and outrageous, Hall has failed to point the Court to any evidence whatsoever to establish that the emotional distress suffered by him rises to the level of severe distress required to support such a claim, or that Lane desired to inflict severe emotional distress upon Hall or knew that severe emotional distress would be certain or substantially certain to result from his conduct toward Hall. Accordingly, the Court finds that Hall has failed to present sufficient evidence to establish a genuine dispute of material fact from which a jury could conclude that Lane is liable for intentional infliction of emotional distress. As such, Defendants' request that the Court dismiss Hall's intentional infliction of emotional distress claim is **GRANTED**.

### G. Hall's Unpaid Wages Claim

Hall alleges a claim under La. R.S. § 23:631, which provides in pertinent part:

> Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

La. R.S. § 23:631(b). Under the law, an employer's failure to comply with § 23:631 triggers the penalty provision found at La. R.S. § 23:632:

> Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages **from the time the employee's demand for payment is made** until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand

18

following discharge or resignation.

La. R.S. § 23:632 (emphasis added).

Defendants concede that the Company made an error when it did not immediately issue Hall a commission check in the amount of $414.23 in February 2012. Defendants contend, however, that Hall cannot point to sufficient evidence to establish that he demanded such money, and thus, cannot recover under La. R.S. § 23:632. In opposition, Hall points to evidence that he made a demand for wages at the dealership with Cindy Brown, the accounts payable clerk, on the day he quit. (Doc. 63-5, p. 30.) Viewing the facts in the light most favorable to Hall, the Court finds that he has presented sufficient evidence to create a genuine dispute of fact as to whether he demanded his unpaid wages. Accordingly, Defendants' request that the Court dismiss Hall's unpaid wages claim is **DENIED**.

However, in the absence of a surviving federal claim, and in the interest of fairness to all parties involved and judicial economy, the Court declines to exercise jurisdiction over Hall's remaining state law claim, and will remand this matter to the Nineteenth Judicial District Court, Parish of Baton Rouge, State of Louisiana. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011); *Beiser v. Weyler*, 284 F.3d 665, 675 (5th Cir. 2002) (noting that where "no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court"); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted) (the "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial.")

**IV.     Conclusion**

Accordingly,

**IT IS ORDERED** that **Defendants' Motion for Summary Judgment (Doc. 61)** is **GRANTED IN PART** and **DENIED IN PART**.

- Defendants' request that the Court dismiss Hall's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, is **GRANTED**.  Accordingly, Hall's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, are **DISMISSED**.

- Defendants' request that the Court dismiss Hall's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**.  Accordingly, Hall's hostile work environment claim on the basis of his sex is **DISMISSED**.

- Defendants' request that the Court dismiss Hall's hostile work environment claim on the basis of his race is **GRANTED**.  Accordingly, Hall's hostile work environment claim on the basis of his race is **DISMISSED**.

- Defendants' request that the Court dismiss Hall's hostile work environment claim on the basis of his national origin is **GRANTED**.  Accordingly, Hall's hostile work environment claim on the basis of his national origin is **DISMISSED**.

- Defendants' request that the Court dismiss Hall's constructive discharge claim is **GRANTED**.  Accordingly, Hall's constructive discharge claim is **DISMISSED**

- Defendants' request that the Court dismiss Hall's assault and battery claims is **GRANTED**. Accordingly, Hall's assault and battery claims are **DISMISSED**.

- Defendants' request that the Court dismiss Hall's intentional infliction of emotional distress claim is **GRANTED**. Accordingly, Hall's intentional infliction of emotional distress claim is **DISMISSED**.

- Defendants' request that the Court dismiss Hall's claim under La. R.S. § 23:631 is **DENIED**.

**IT IS FURTHER ORDERED** that Hall's claim under La. R.S. § 23:631 is **DISMISSED WITHOUT PREJUDICE** and that this matter is **REMANDED** to the Nineteenth Judicial District Court, Parish of Baton Rouge, State of Louisiana for consideration of Hall's remaining state law claim.

Baton Rouge, Louisiana, this 30th day of September, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**